UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Benjamin Hendricks,

    Plaintiff,

    v.                          Case No. 2:11–cv–40

John DesMarais, *et al.*,              Judge Michael H. Watson

    Defendants.

## OPINION AND ORDER

Benjamin Hendricks ("Plaintiff") objects to Magistrate Judge Kemp's Report and Recommendation ("R&R"), ECF No. 106, which recommended that the Court grant Defendants' Motion for Summary Judgment. Obj., ECF No. 113. For the following the reasons, the Court overrules Plaintiff's objections, adopts the R&R, and grants summary judgment to Defendants.

## I.    FACTS

The Magistrate Judge detailed the proposed findings of fact in this case at pages three through fourteen of the R&R. As neither party objects to the findings of fact proposed in the R&R, the Court adopts and incorporates them herein. The Court briefly repeats the relevant facts.

Plaintiff is currently incarcerated at the Pickaway Correctional Institution and is proceeding *pro se*. Defendant John DesMarais ("DesMarais") was the Medical Director for the Ohio Department of Rehabilitation and Corrections ("ODRC") while Plaintiff was incarcerated at the Belmont Correctional Institution

("BCI"). Defendant Mona Parks ("Parks") was an Assistant Chief Inspector (medical) for the ODRC during that time. Defendant Theresa Bell ("Bell") was the Dietary Operations Manager for the ODRC. Defendant Susan Nesbitt ("Nesbitt") was the Health Care Administrator at BCI. Defendant Michelle Miller ("Miller") was the warden of BCI.

Plaintiff's suit centers around the diet he received while incarcerated at BCI. While the parties do not dispute that Plaintiff suffers a medical condition requiring a special diet, they do dispute the actual diagnosis of Plaintiff's condition as well as the accommodation he received while at BCI. Plaintiff asserts he suffers from Crohn's disease; Defendants contend he suffers from Ulcerative Colitis. Plaintiff alleges that he was ordered by doctors to be on a low residue diet and/or nutritional supplements but that while at BCI, DesMarais, Parks, Bell and Nesbitt denied him the diet/supplements in violation of his Eighth Amendment right to be free from deliberate indifference to his serious medical needs. He argues the failure to accommodate his diet eventually led to or exacerbated a parastomal hernia. Defendants argue Plaintiff was given the required diet but refused it by going on hunger strikes and ignored it by purchasing nonconforming items from the commissary.

Plaintiff also asserts that while at BCI, he made several complaints regarding his medical care and that Miller retaliated against him by ordering officers to destroy his legal materials and observing the same, which he says lead to a delay in filing the complaint in this suit.

## II.   STANDARD OF REVIEW

When the Court receives objections to a magistrate judge's R&R on a dispositive matter, the assigned District Judge "determine[s] de novo . . . any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b). After review, the District Judge "may accept, reject, or modify the recommended disposition, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1).

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the nonmoving party's claim. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009). Then, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000); *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 487 (6th Cir. 2006). The Court disregards all evidence favorable to the moving party that the jury would not be required to believe. *Reeves*, 530 U.S. at 150–51. The nonmoving

party must show a "genuine" issue of fact exists, however, and "must do more than simply show there is some metaphysical doubt as to the material facts," and "may not rest upon its mere allegations or denials of the adverse party's pleadings . . . ." *Moldowan*, 578 F.3d at 374; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). More than a mere scintilla of evidence is required to withstand a motion for summary judgment. *Worthy v. Michigan Bell Tel. Co.*, 472 F. App'x 342, 343 (6th Cir. 2012).

Thus, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## III.    ANALYSIS

Plaintiff sues DesMarais, Parks, Bell, and Nesbitt under 42 U.S.C. § 1983, alleging an Eighth Amendment violation based on deliberate indifference to his serious medical needs. He sues Miller under § 1983 for retaliation in violation of his First Amendment rights.

### A. § 1983—Eighth Amendment Deliberate Indifference to Serious Medical Needs

Plaintiff's claim against DesMarais, Parks, Bell, and Nesbitt arises under

42 U.S.C. § 1983.  Section 1983 states in relevant part:

> [e]very person who, under color of any statute, regulation, custom or
> usage of any State or Territory or the District of Columbia, subjects,
> or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws of the
> United States, shall be liable to the party injured in an action at law,
> suit in equity, or other proceedings for redress[.]

42 U.S.C. § 1983.  To prevail on a claim under § 1983, a plaintiff must show that

a person acting under color of law deprived him of his rights secured by the

United States Constitution or its laws.  *Berger v. City of Mayfield Heights*, 265

F.3d 399, 405 (6th Cir. 2001).  Plaintiff contends DesMarais, Parks, Bell, and

Nesbitt acted under color of state law and deprived him of his Eighth Amendment

rights.  DesMarais, Parks, Bell and Nesbitt do not contest the "under color of

state law" portion of Plaintiff's § 1983 claim.  Rather, they argue Plaintiff cannot

show a deprivation of his Eighth Amendment rights.

Plaintiff attempts to establish an Eighth Amendment violation through

deliberate indifference to his serious medical needs.  To do so, he must first

show that objectively, he has a sufficiently serious medical need such that denial

of the need would pose a substantial risk of serious harm.  *Quigley v. Thai*, 707

F.3d 675, 681 (6th Cir. 2013).  Second, he must show Defendants subjectively

acted with deliberate indifference to that serious medical need, which requires a

showing that Defendants were aware of facts from which they could draw the

inference that a substantial risk of harm would exist if needed care were not provided, actually drew the inference, and acted in disregard of that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Quigley*, 707 F.3d at 681. Plaintiff must show more than mere negligence or a disagreement with his treatment in order to show a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Quigley*, 707 F.3d at 81.

Defendants argued in their Motion for Summary Judgment that Plaintiff cannot establish an Eighth Amendment deliberate indifference claim because: (1) Plaintiff's deliberate indifference claim is time-barred; (2) Plaintiff does not suffer from Crohn's disease and thus cannot establish the objective component of his claim; (3) there is no genuine dispute of material fact as to whether Plaintiff actually received an accommodated diet, and thus Plaintiff cannot establish the subjective component of his claim; (4) any harm was the result of Plaintiff's refusal to abide by the diet; and (5) Defendants are entitled to qualified immunity.

1. *Statute of Limitations*

Defendants argued Plaintiff's § 1983 deliberate indifference claim is governed by Ohio's two year statute of limitations period. They argued that based on Plaintiff's revised amended complaint, the cause of action for deliberate indifference to a serious medical condition arose "shortly after his incarceration," which Defendants state was September 22, 2008. Thus, they argued the statute of limitations ran out on September 22, 2010, and as Plaintiff's complaint was filed on January 14, 2011, it was time barred.

Plaintiff responded that he was only suing for violations committed between February 20, 2009 and November 2009, so his January 2011 complaint was timely.

The Magistrate Judge noted the confusion regarding the relevant time frame in Plaintiff's verified revised amended complaint but concluded that because he limited the time period in his response to February 20, 2009 to November 2009, he would not consider Defendants' statute of limitations argument and concluded Plaintiff's complaint was timely. Neither party objected to that recommendation.

Accordingly, the Court adopts that aspect of the Magistrate Judge's recommendation without *de novo* review[1] and finds Plaintiff abandoned claims that arose prior to that period but that his § 1983 deliberate indifference claim, based on violations occurring between February 20, 2009 and November 2009, is not time barred.

2. *Whether Plaintiff Suffers From Crohn's Disease*

Defendants argue there is no genuine dispute of material fact as to whether Plaintiff has Crohn's disease and that the evidence shows he does not. Instead, Defendants argue Plaintiff suffers from Ulcerative Colitis.

In support, Defendants cite a 2007 record from Fairview Hospital in which Dr. Mohammad Reza stated Plaintiff was not very forthcoming with his history,

---

[1] The R&R informed the parties that failure to object within fourteen days operated as a waiver of the right to *de novo* review and waiver of the right to appeal to the United States Court of Appeals for the Sixth Circuit. R&R 24, ECF No. 106.

but it did note three times that his past history was "significant for Crohn [sic] disease." *Id.* Ex. B, ECF No. 101-2. Defendants also present a CT scan from 2008 from the Ohio State University Medical Center ("OSUMC") which states there was "no evidence of Crohn's disease." Mot. Summ. J. Ex. A, ECF No. 101-1. The discharge summary from that visit confirms the CT scan "showed no evidence of Crohn's disease," but the plan was to put Plaintiff on "medical management for Crohn's disease . . . ." *Id.* Ex. D, ECF No. 101-4. Another record from 2008 states Plaintiff reported to the doctor that he was diagnosed with Ulcerative Colitis in 2002 and re-diagnosed with Crohn's disease later. *Id.* Ex. C, ECF No. 101-3. Defendants also present a Final Report on a Flexible Sigmoidoscopy Plaintiff underwent in November 2009, which indicated "Established Crohn's disease of the colon . . . ." *Id.* Ex. E, ECF No. 101-5. Finally, a record regarding an upper GI endoscopy from December 2009 does not mention Crohn's disease. *Id.* Ex. F, ECF No. 101-6.

In contrast, Plaintiff offered evidence he was diagnosed with Ulcerative Colitis in October 2002. Resp., PAGEID # 825, ECF No. 102-1. He submits a surgical pathology report from MetroHealth Medical Center from April 11, 2003 with a final diagnosis including "[s]evere chronic active colitis with crypitis and crypt abscess, consistent with Crohn's disease" and which appears to list the associated diagnoses as "CROHN'S DISEASE [555.9]-Primary." *Id.*, PAGEID # 828–30. Office visit records from May 30, 2003; October 10, 2006; November 14, 2006; January 22, 2008; and May 6, 2008 all state Plaintiff had Crohn's

disease or a history of Crohn's disease. *Id.*, PAGEID # 835–44. Plaintiff further submits a Confidential Final Report from OSUMC from October 11, 2008 listing as an impression, "Crohn's disease," but stating the doctor would like to look at prior medical records. *Id.*, PAGEID # 845–47. It appears a doctor signed a consultation order due to his Crohn's disease the same day. *Id.*, PAGEID # 848. The discharge instructions from that visit include a diagnosis of "Crohn's exacerbation." *Id.*, PAGEID # 850. The discharge instructions from OSUMC also specify a regular/low residue diet. *Id.*, PAGEID # 851. In November 3, 2009, Plaintiff's Emergency Trauma Record from East Ohio Regional Hospital states, "I believe the patient is suffering with an exacerbation of his Crohn disease." *Id.*, PAGEID # 872. And on November 22, 2009, Plaintiff was discharged from OSUMC with a diagnosis including Crohn's Flare and Crohn's Disease. *Id.*, PAGEID # 876.

Magistrate Judge Kemp did not offer a recommendation as to whether there is a genuine dispute of material fact regarding whether Plaintiff suffers from Ulcerative Colitis or Crohn's disease. Without any expert testimony explaining the medical evidence, the Court cannot confidently interpret the significance of the medical records. The Court must take the evidence in the light most favorable to the non-moving party, and based on the references to Crohn's disease in many of the records, the Court concludes that there is a genuine dispute of fact as to whether Plaintiff has Crohn's disease.

This conclusion does not, however, necessarily affect the R&R's ultimate recommendation to grant summary judgment. While Magistrate Judge Kemp did not explicitly conclude there is a genuine issue of fact as to whether Plaintiff suffers from Crohn's disease, he essentially concluded any dispute of fact would not be *material*, because regardless of whether Plaintiff has Ulcerative Colitis or Crohn's, the record is clear that Plaintiff suffers from a serious medical condition.

Plaintiff objects to that part of the R&R, saying the most important issue in the case is the fact that the parties disagree on the precise diagnosis at issue. Thus, he argues, the Magistrate Judge erred.

Upon *de novo* review, the Court agrees with the Magistrate Judge that whether Plaintiff's exact diagnosis is Crohn's disease or Ulcerative Colitis is not important as long as he can establish a serious medical condition and need for a restricted diet, which the R&R assumed he could. In other words, the R&R essentially found that Plaintiff satisfied the first element of his deliberate indifference claim, even if Defendants' version of the facts as to his precise diagnosis was correct. This portion of the R&R in no way prejudiced Plaintiff because the R&R recommended granting summary judgment for failure to establish the second element of Plaintiff's claim. Although there is a genuine dispute of fact as to whether Plaintiff suffers from Crohn's or Ulcerative Colitis, the dispute is not of a *material* fact because either way, he has a serious medical need. Plaintiff's objection regarding the factual dispute as to whether he suffers from Crohn's disease is therefore overruled.

3. *Whether Plaintiff Received a Low Residue Diet and/or Nutritional Supplements*

Defendants argued there is no genuine dispute of material fact as to whether Plaintiff received an adequate diet. They acknowledged that a low residue diet is not one of the diets recognized in the Ohio Department of Rehabilitation and Correction Bureau of Medical Services Diet Formulary Protocol,[2] but argue the evidence shows Plaintiff received an adequate diet such that he cannot establish the subjective component to his deliberate indifference claim.

With their reply brief, Defendants presented the Ohio Department of Rehabilitation and Correction Bureau of Medical Services Diet Formulary Protocol ("ODRC Diet Protocol"), the purpose of which "is to establish standardized guidelines, language, ordering procedures, and to specify the approved types of diets when ordering of therapeutic diets and liquid supplements for patients requiring nutrition intervention to treat medical conditions." ODRC Diet Protocol, Reply Ex. 1, ECF No. 104-1. The ODRC Diet Protocol does not recognize a specific diet called a "low residue" diet. It does, however, address requests for non-formulary diets:

> C. Non-Formulary Diets
> 1. A nurse of ALP will refer all non-formulary diet orders to the nutrition services person for review.
> 2. Non-formulary diet orders from non-DRC facilities are considered to be recommendations and shall be reviewed by the DRC Dietary

---

[2] The Court does not construe Defendants' argument as one that the fact that their diet formulary protocol does not recognize a low residue diet means they would not have an Eighth Amendment obligation to provide one if it was medically necessary.

Operations Manager and the DRC Medical Director prior to implementation.
3. The dietetic technician shall contact the Dietary Operations Manager in writing listing the patient name, number, Diet Order (DRC5002) and reason documented for diet order.
4. The Dietary Operations Manager is responsible for reviewing the written request and working with the nutrition service person and the ALP to provide diet alternatives that can be produced in DRC and that meet the medical needs of the patient.

*Id.* 6–7.

To show Plaintiff received the required diet, Defendants further produced an interdisciplinary progress note ("IPN") written by Nesbitt from February 20, 2009, which states:

Met with patient to review diet orders. He discussed what he could not eat and his food preferences. He stated that OSU had him on a low residue diet. I located his discharge instructions from OSU and found: regular low residue listed as his diet. I shared this information with the dietician and asked which of our diet plans fits this criteria. Informed patient I would have him seen on Wednesday by dietician.

Resp. Ex. G, ECF No. 101-7. Another IPN, from February 26, 2009, written by Nesbitt states that Plaintiff's appointment with the dietician would be rescheduled. *Id.* Ex. H, ECF No. 101-8.

Defendants also present infirmary admission orders from April 23, 2009 which show a low residue diet was ordered as well as physician orders from May 2009 and August 20, 2010, each ordering that Plaintiff receive six small meals for six months.[3] *Id.* Exs. I, J, K,, ECF Nos. 101-9, 101-10, 101-11.

---

[3] If Defendants do not know what Plaintiff means by a low residue diet and the ODRC Diet Protocol does not recognize such a diet, it is curious that infirmary admission orders would contain a low residue diet. *See* Mot. Summ. J. Ex. I, ECF No. 101-9.

Plaintiff concedes he was placed on a "six meals diet," Resp. 18, ECF No.

102, which the ODRC Diet Protocol describes as:

> ii. Six Meals Diet
> 1) The diet provides the 3 meals and 3 snacks each day to provide adequate calories for patients who need to consume small amounts of food more frequently.
> 2) The morning and afternoon snack shall consist of 1 slice of bread, 2 ounces of cheese, 1 piece of fresh fruit or ½ cup of canned fruit and 1 cup of beverage.
> 3) The evening snack shall be the same as a regular HS snack (see the HS snack section, 2-b-vii, of this protocol).

The regular HS snack is described as:

> 1) HS snacks maintain consistent carbohydrate and protein levels throughout the night for insulin-dependent diabetics and provide additional calories for patients who have difficulty maintaining adequate weight. HS snacks shall be composed of:
>    a) 1 serving of starch - either 4 graham crackers or 6 saltine crackers, or 1 slice of bread.
>    b) 1 piece of fresh fruit or 1/2 cup of canned fruit, and
>    c) 2 tablespoons of peanut butter for a regular HS snack or 2 tablespoons of jelly for a low protein/RENAL snack.

ODRC Diet Protocol 5–6, Reply Ex. 1, ECF No. 103-1. As such, Defendants

argued there was no genuine dispute of material fact as to whether Plaintiff was

afforded a reasonable diet in response to his medical need.

Plaintiff argued he was not provided a low residue diet. In support, he

submitted a disposition of grievance form from Kelly Riehle in which she writes

that a review of Plaintiff's medical file and OSU notes indicates no evidence of

Crohn's disease. She writes that he is given a special diet because of his

colostomy bag, which consists of six small meals a day. She further states he has been educated on what food items to stay away from and that if a food he is not to eat is on the menu, he is given a substitute for that item. Disposition of Grievance, PAGEID # 857. Plaintiff argues that while he was given a six meal diet, that is not the same as a low residue diet. Moreover, while a low residue diet was ordered, he argues there is no evidence it was actually provided.

The Magistrate Judge determined there is no genuine dispute of material fact as to whether Defendants made every attempt to accommodate Plaintiff's dietary needs, even if they did not provide something called a "low residue diet." R&R 19, ECF No. 106. The R&R states that Plaintiff admitted to meeting with dietary staff at BCI and admitted he was provided a special six meal diet to accommodate his needs. *Id.* at 20. Further, Magistrate Judge Kemp concluded the evidence is undisputed that Plaintiff was given at least one diet pass stating he should not have peanut butter, wheat bread, corn, raw vegetables, or fruit, and that Plaintiff refused the diet pass. *Id.* Moreover, the R&R states Plaintiff failed to provide evidence of what he considers a low residue diet and failed to provide evidence as to how his six meal diet differed from a low residue diet. *Id.* The R&R concluded that the information Plaintiff provided regarding the recommended nutrition for patients with Crohn's disease and Ulcerative Colitis fails to define a low residue diet but does contain lists of recommended and non-recommended foods, which list is consistent with the diet pass issued to Plaintiff during the time period at issue. Furthermore, the R&R found Plaintiff failed to

show that Defendants' placing of Plaintiff on a six meal diet was recklessly indifferent to a serious risk of medical harm. *Id.* at 21.

Plaintiff objects to the R&R, arguing a six meal diet is not the same as a low residue diet. He says he was ordered a low residue diet, which the dietary technician attempted to implement but which Defendants prevented. He also attaches an exhibit which he says explains a low residue diet.

A *de novo* review of the record shows that on February 20, 2009 Nesbitt confirmed OSU placed Plaintiff on a regular low residue diet and that Nesbitt asked a dietician which plan met that criteria and intended to have Plaintiff meet with the dietician. Mot. Summ. J. Ex. G, ECF No. 101-7. It is uncontested Plaintiff was never placed on anything called a "low residue diet" but was placed on a six meal diet. The disagreement is whether the six meal diet is consistent with a low residue diet and if not, whether Defendants recklessly disregarded a known risk by placing Plaintiff on a six meal diet.

Plaintiff offered the following evidence regarding a recommended diet for people with Crohn's disease or Ulcerative Colitis: (1) a document titled "Crohn's Disease and Ulcerative Colitis Nutrition Therapy,"[4] (2) a Crohn's and Colitis Foundation of America ("CCFA") document titled "About Crohn's Disease and Ulcerative Colitis," (3) what appears to be an article printed from WebMD titled "Creating a Crohn's Disease Diet Plan," and (4) a CCFA brochure called "Living

---

[4] As the R&R notes, there is no information as to who sent this document to Plaintiff.

with Crohn's Disease." Resp., PAGEID # 864–66, 879–80, 887–89, ECF No. 102-1; Obj. Ex. A, ECF No. 113-1.

To the extent the Court may consider the documents, two of them state there is no specific diet plan for Crohn's or Ulcerative Colitis. For example, "About Crohn's Disease and Ulcerative Colitis" states, "[t]here is no link between eating certain kinds of foods and IBD, but dietary modifications, especially during severe flare-ups, can help reduce disease symptoms and replace lost nutrients." Resp., PAGEID # 880, ECF No. 102-1. It goes on to state "[t]here is no single diet or eating plan that will work for everyone with Crohn's disease or ulcerative colitis." *Id.* The WebMD article echoes this sentiment, "the fact is there is no scientifically proven diet for inflammatory bowel disease. Most experts believe, though, that some patients can identify specific foods that trigger your gastrointestinal symptoms." *Id.* at PAGEID # 887. The CCFA brochure lists multiple types of diets but does not list anything called a "low residue diet." Obj. Ex. A, PAGEID # 970, ECF No. 113-1.

Moreover, the R&R is correct that the diet described in "Crohn's Disease and Ulcerative Colitis Nutrition Therapy" is consistent with Plaintiff's six meal diet and diet pass. It recommends eating small meals or snacks every 3 to 4 hours, Resp., PAGEID # 864, ECF No. 102-1, which is consistent with Plaintiff's six meal diet plan.[5] It recommends including whole grains, fruits, and vegetables

---

[5] Both the WebMD article and CCFA brochure also recommend regular meals plus two or three snacks a day. Resp., PAGEID # 887, ECF No. 102-1; Obj. Ex. A, PAGEID # 970, ECF No. 113-1.

when a person does not have symptoms but decreasing when symptoms appear. *Id.* Recommended foods include low-fat cheese and canned fruit (raw fruit is not recommended). *Id.* at PAGEID # 864–66; *see also* PAGEID # 888. Both cheese and fresh or canned fruit are included in the six meal diet, and Plaintiff's diet pass[6] stated he is not to have fresh fruit. Reply Ex. 1, PAGEID # 906; Mot. Summ. J. Ex. M, ECF No. 101-13. Whole wheat and whole grain bread is not recommended, Resp., PAGEID # 865, ECF No. 102-1, *see also* PAGEID # 888, and Plaintiff's diet pass instructed that he is not to have wheat bread, Mot. Summ. J. Ex. M, ECF No. 101-13.

Further, while the WebMD article defines a "low residue diet" as "one that's low in specific foods that add residue to the stool," it states a low residue diet would avoid raw fruits and vegetables, which is consistent with Plaintiff's diet pass, which says he is not to have raw fruits or vegetables. *Id.*, PAGEID # 888. The article states a low residue diet would also avoid other foods, but those foods are not included in the daily snacks included in Plaintiff's six meal diet. Even if Plaintiff is correct in stating there were portions of the snack bags he could not eat, the March 27, 2009 disposition of his grievance shows he was provided a substitute for those portions of the snacks he could not eat, and Plaintiff does not contend otherwise. *See* Resp., PAGEID # 857.[7]

---

[6] Plaintiff objects that the diet pass was issued after he was transferred from BCI, but he cites Mary Roush's declaration as evidence, and the declaration does not support his statement.

[7] One of Plaintiff's grievances states that meal items he could not eat were substituted with other items he could not eat, but he does not persist in that argument to the Court.

Thus, after a *de novo* review, the Court finds the R&R correctly concluded Plaintiff failed to explain how his six meal diet and diet pass differed from a low residue diet.  The six meal diet was consistent with the recommended diet for a person with Crohn's or Ulcerative Colitis.  Plaintiff has not explained what portions of his six meal diet were inconsistent with the recommended diet. Accordingly, there is no evidence from which a reasonable jury could find that Defendants denied him a low residue diet.[8]

Moreover, even if the low residue diet and six meal diet are not exactly the same, Plaintiff must show that Defendants were aware of facts from which they could draw the inference that a substantial risk of harm would exist if a low residue diet were not provided, actually drew the inference, and acted in disregard of that risk by ordering a six meal diet instead.  There is no evidence in the record from which a reasonable juror could find that Defendants drew the inference that Plaintiff would face a substantial risk of harm if they did not order a low residue diet or that they disregarded that risk by choosing instead to order a six meal diet.  To the first point, even though Plaintiff's discharge orders stated low residue diet, they did not say what could happen if Plaintiff was not given a low residue diet.  To the extent Plaintiff put anyone on notice by stating, without supporting medical evidence, that "anybody who knows anything about Crohn's Disease knows there are certain foods that cause irritation and pain," in his

---

[8] While Plaintiff alleges Nesbitt confiscated one of his diet passes, it is not clear what diet pass he is referring to.  He seems to refer to a diet pass that ordered something other than a six meal diet, because he states food service had difficulty understanding the diet pass. His grievances show he was on a six meal diet at least as of March 27, 2009.

grievance, he failed to show that Defendants read his grievance and continued to deny him a low residue diet. Moreover, DesMarais' input was that someone in Plaintiff's condition did *not* need a special diet or supplements, which shows DesMarais did not draw the inference of a substantial risk of harm. Resp., PAGEID # 856, 860 ECF No. 102-1. Even if Plaintiff suffers from Crohn's, he has not presented evidence Defendants knew there was a substantial risk of serious harm if a Crohn's patient does not receive a special diet. In addition, even if Defendants drew the inference and even if the six meal diet is not the same as a low residue diet, there is no evidence Defendants deliberately disregarded that risk by placing him on a six meal diet instead of a low residue diet. For instance, there is no evidence they knew there was a difference between the diets but gave him the six meal diet instead of a low residue diet anyway.

To the extent Plaintiff argues Defendants disregarded a known risk of harm by depriving him of nutritional supplements, there is no genuine dispute of material fact as to whether Plaintiff was given nutritional supplements. Defendants do not argue he was given supplements. Nonetheless, his argument fails for the same reason—there is no evidence Defendants were aware a substantial risk of harm would exist if nutritional supplements were not provided and consciously disregarded that risk by ordering a six meal diet plan instead of nutritional supplements.

Plaintiff further objects on the grounds that the fact that Plaintiff was seen by doctors outside of the prison means that Defendants consciously disregarded a known risk of harm when they did not follow the outside doctor's discharge instructions. The Court has determined that Plaintiff failed to show that the six meal diet and the "low residue diet" contained in various discharge instructions were significantly different such that Plaintiff cannot show Defendants disregarded the discharge instructions. He certainly has not presented any evidence that Defendants were aware that a six meal diet would not satisfy the requirements of a "low residue diet" but ordered it anyway.

The Court therefore overrules Plaintiff's objections, adopts the R&R, and finds there is no genuine issue of material fact as to whether Defendants denied him a medically necessary diet. As such, Defendants are entitled to summary judgment on his deliberate indifference claim.

The R&R did not address Defendants' remaining arguments on the deliberate indifference claim, and the Court finds no need to do so either.

## B. § 1983—First Amendment Retaliation

Defendants argued in their motion for summary judgment that Plaintiff's § 1983 claim against Miller based on retaliation fails because Plaintiff failed to exhaust his administrative remedies in accordance with 42 U.S.C. § 1997e(a).

Plaintiff contended he did exhaust his administrative remedies against Miller and purported to attach a grievance he filed and the disposition of that grievance. The attachments were not included with Plaintiff's response;

however, Defendants provided them with their reply.  Grievance Documents,

Reply Ex. 2, ECF No. 104-2.

Defendants replied that the grievance was against a custody staff, not

Miller, and therefore was improperly submitted to the office of the Chief

Inspector.

Magistrate Judge Kemp concluded Plaintiff may have raised a genuine

issue of material fact on the issue of exhaustion but declined to consider the

issue of exhaustion because he determined Plaintiff's claim clearly failed on the

merits.  Specifically, Magistrate Judge Kemp assumed Plaintiff could establish

the first two elements of a retaliation claim: that he was engaged in protected

conduct and that Miller took an adverse action against him that would deter a

person of ordinary firmness from continuing to engage in that conduct.  R&R 22,

ECF No. 106.  He concluded Plaintiff failed to establish any facts supporting the

third element of a retaliation claim: that the adverse action was motivated at least

in part by Plaintiff's protected conduct.  Magistrate Judge Kemp determined

Plaintiff submitted no facts showing a connection between his filing of grievances

and Miller's instruction to destroy his legal materials, and more specifically, that

Plaintiff did not even offer facts showing Miller was aware of the grievances he

filed when she supposedly ordered the destruction of his legal materials.  *Id.* at

23.  It also recommended granting summary judgment on the claim to the extent

it is construed as an access to the courts claim because Plaintiff failed to present

evidence showing prejudice to the underlying litigation as he complained of a

delay in filing his complaint in the instant case, which was timely filed.  *Id.*  The R&R recommends the Court grant Miller summary judgment on Plaintiff's § 1983 retaliation claim.  *Id.* at 24.

Plaintiff did not object to the recommendation; accordingly, the Court adopts the recommendation without reviewing it *de novo*.  The Court grants Miller summary judgment on Plaintiff's § 1983 claim based on retaliation.

## IV.    CONCLUSION

For the forgoing reasons, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the R&R, and **GRANTS** Defendants summary judgment on Plaintiff's claims.[9]

The Clerk shall enter final judgment and terminate the case.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[9] Additionally, Plaintiff appears to object, or at least direct the Court's attention to, a perceived discovery violation by Defendants.  Plaintiff states Defendants violated Magistrate Judge Kemp's Order granting Plaintiff's motion to compel, ECF No. 87.  He does not say how Defendants violated the order, and their supplemental responses have been provided.  Resp., PAGEID # 811–23.  To the extent Plaintiff objects to the R&R based on a discovery issue, the objection is overruled.